UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

CHATTANOOGA GAS COMPANY,   )
   )
      Plaintiff,   )
v.   )      No. 1:04-cv-214
   )      Judge Edgar
CITY OF CHATTANOOGA,   )
   )
      Defendant.   )

## MEMORANDUM AND ORDER

Plaintiff Chattanooga Gas Company ("Chattanooga Gas") is a Tennessee corporation and public utility with its principal place of business in Chattanooga, Tennessee. Chattanooga Gas brings this action for declaratory and injunctive relief under 42 U.S.C. § 1983 challenging the constitutionality of Ordinances 11175 and 11333 enacted by the City Council of defendant City of Chattanooga, Tennessee ("City") increasing the application fees charged by the City for temporary use permits to excavate and make cuts in the pavement of City streets. Chattanooga Gas contends that the fees assessed by Ordinances 11175 and 11333 breach the terms of its utility franchise agreement with the City and violate certain provisions of the United States Constitution. The complaint seeks to invoke this Court's subject matter jurisdiction under 28 U.S.C. § 1331. The City is a chartered municipality created by the Private Acts of the Tennessee General Assembly, Private Acts of 1869, Chapter 4, Section I, and is a political subdivision of the State of Tennessee located in Hamilton County.

The first and most fundamental question presented in every case brought to federal

1

district court is whether there is subject matter jurisdiction. *Caudill v. North American Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000); *Douglas v. E.G. Baldwin & Associates*, 150 F.3d 604, 606-07 (6th Cir.1998); *Eagle Capital Funding, LLC v. Lowman Finishing, Inc.*, 2005 WL 1077726, * 2 (E.D. Tenn. March 8, 2005). Fed. R. Civ. P. 12(h)(3) provides: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

Federal courts are courts of limited jurisdiction and may exercise only those powers authorized by the United States Constitution and federal statutes enacted by Congress. It is presumed that a cause of action lies outside this limited jurisdiction. In the case at bar, the burden of overcoming the presumption and establishing that this Court has subject matter jurisdiction rests upon plaintiff Chattanooga Gas because it is the party seeking to invoke jurisdiction. *Kokkonen v. Guradian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994); *Re/Max International, Inc. v. Realty One, Inc.*, 271 F.3d 633, 641 (6th Cir. 2001); *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir.2001); *Douglas*, 150 F.3d at 606; *Eagle Capital Funding*, 2005 WL 1077726, at * 2.

This Court may not decide cases over which Congress has withdrawn subject matter jurisdiction. The Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

The threshold question before the Court is whether the fees assessed by the City in Ordinances 11175 and 11333 constitute a "tax" or a regulatory fee on Chattanooga Gas for purposes of the TIA. If the assessments in Ordinances 11175 and 11333 are properly characterized as a tax, then the TIA divests this Court of subject matter jurisdiction over the complaint of Chattanooga Gas.

If, on the other hand, the assessments are properly characterized as a mere regulatory fee, then the assessments fall outside the scope of the TIA and this Court may exercise subject matter jurisdiction.

After reviewing the record and hearing oral argument, the Court concludes that the application fees assessed by the City in Ordinances 11175 and 11333 constitute a tax imposed on Chattanooga Gas within the scope and meaning of the TIA. Moreover, Chattanooga Gas has a plain, speedy and efficient remedy available in the Tennessee state courts on its complaint. The Tennessee state courts provide an adequate judicial forum for Chattanooga Gas to present all of its claims and challenges to Ordinances 11175 and 11333. Consequently, the TIA applies and this Court lacks subject matter jurisdiction to grant any declaratory and injunctive relief demanded by Chattanooga Gas in its complaint. Pursuant to the TIA, this Court is not authorized to enjoin, suspend, restrain, or otherwise interfere with the City's assessment, levy, and collection of the tax. The complaint of Chattanooga Gas must be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(h)(3) and the TIA on the ground of lack of subject matter jurisdiction.

## I.    Facts

In November 1980, the City adopted Ordinance 7746 ("franchise agreement") granting a public utility franchise to Chattanooga Gas for a term of thirty years for the purpose of constructing, operating, and maintaining a system of natural gas distribution and service within the City. The franchise agreement grants Chattanooga Gas the right and privilege to construct, operate, and maintain a system of natural gas mains, pipes and conduits in, upon, along and under the streets, alleys, avenues, bridges, and public places within the City.

Section 1 of Ordinance 7746 provides that its enactment shall not constitute any repeal or modification, express or implied, of any other City ordinance then in effect. It further

provides that the City reserves the right to enact any and all such ordinances respecting Chattanooga Gas and its business "as may be authorized by law, provided that any such ordinances shall not abridge the rights and privileges granted" to Chattanooga Gas under Ordinance 7746.

Section 4 of Ordinance 7746 provides that when Chattanooga Gas cuts or digs into the streets for the purpose of installing or repairing its gas pipelines, Chattanooga Gas "shall with reasonable diligence restore such streets ... to as good state of repair and condition as the same were before disturbed by said Company and shall in all respects fully indemnify and save harmless the City from and against all damages, costs, attorney's fees, or other expenses which the City may incur by reason of such digging ...."  It further provides: "All such construction work performed by [Chattanooga Gas] shall be subject to the approval of the City's Department of Public Works, which approval shall not be unreasonably withheld."

Section 8 of Ordinance 7746 provides a table of annual franchise fees that Chattanooga Gas is obligated to pay to the City.  The franchise fees increase incrementally for each year of the thirty-year franchise.  For example, the annual franchise fee for 2001 is $295,000, the franchise fee for 2002 is $302, 500, the franchise fee for 2003 is $310,000, and the franchise fee for 2004 is $317,500.  The franchise fees are due and payable on a quarterly basis.

Prior to and at the time of City's adoption of Ordinance 7746 (franchise agreement) in November 1980, the City had in place a street excavation permit requirement with accompanying fees.  Chattanooga Gas paid those permit fees from November 1980 until the City adopted Ordinance 11175 on September 11, 2001.

On July 14, 1981, the City's then legislative body, the Chattanooga Board of Commissioners, adopted Ordinance 7871 which amended the City Code by adding a new Section

2-275.  It provided that the City Inspection Department shall collect an administrative charge [application fee] of $3.50 for the issuance of each permit.  After Ordinance 7871 was adopted by the City, Chattanooga Gas complied with it and regularly paid the application for permit fees to the City every time Chattanooga Gas sought to excavate and make cuts in the City streets.

On December 27, 1988, the City adopted Ordinance 9099 which amended and replaced Sections 32-61 through 32-69 of the Chattanooga City Code regulating the excavation and restoration of streets.  Section 32-62, as amended by Ordinance 9099, provided it was unlawful for any person to excavate or to tunnel under any street without first obtaining a permit from the Supervisor of the City Inspection Department.  Section 32-64, as amended by Ordinance 9099, provided that the application for a permit shall be accompanied by a $15 fee for a utility cut in street pavement or boring perpendicular to the center line, and five cents ($0.05) per lineal foot for cuts in right-of-way parallel to center line with a $5 minimum.  After Ordinance 9099 was adopted by the City, Chattanooga Gas complied with it and regularly paid the application fees to the City every time Chattanooga Gas sought a permit to excavate and make cuts in the City streets.

On September 11, 2001, the City adopted Ordinance 11175 amending City Code, Part II, Chapter 32, Section 32-64, to increase and establish new application fees for permits to excavate and make cuts in streets.  Ordinance 11175 deleted the former Section 32-64 and replaced it with a revised Section 32-64 which provided as follows. Each application shall be accompanied by a fee of $300 "for a utility to cut in street pavement or boring perpendicular to center line"  It also requires an application fee of $1.00 per lineal foot for cuts in right-of-way parallel to centerline with a $300 minimum.  For driveway or curb cuts, the application fee is $100.  Chattanooga Gas objects to Ordinance 11175 and has refused to pay the increased fees.  Chattanooga Gas has offset the

increased charges for application fees under Ordinance 11175 by deducting them from the utility franchise fees Chattanooga Gas pays to the City under the franchise agreement.

On October 15, 2002, the City adopted Ordinance 11333 amending the City Code, Part II, Chapter 32, Section 32-64. Ordinance 11333, which is currently in effect, provides that each application for a permit shall be accompanied by a fee of $250 for transverse cuts in pavement, and a permit fee of $1.00 per foot for longitudinal cuts in pavement with a $250 minimum fee. Chattanooga Gas objects to Ordinance 11333 and refuses to pay these new application fees. Chattanooga Gas has continued to unilaterally offset these application fees by deducting them from the utility franchise fees it pays to the City under the franchise agreement.

The City contends that it adopted Ordinances 11175 and 11333 increasing the application fees for street cut permits in an effort to recoup the City's actual costs of administration in regulating and managing the excavation of its streets. The City submits the affidavits of Daisy Madison ("Madison") and William C. McDonald ("McDonald"). [Doc. No. 26]. Madison is employed by the City as Deputy Administrator of Finance and Administration. In her affidavit, Madison states that all of the street cut permit fees paid by Chattanooga Gas are placed into the City's general budget. In other words, the application fees charged by the City for street cut permits are treated and used by the City as general revenue, and such fees are not placed into any special fund that is kept separate and apart from general revenue.

In his affidavit, McDonald states the following. McDonald is employed by the City in the position of Administrator of the Public Works Department ("PWD"). The City Engineer is directly supervised by McDonald. In early 2001, all City Departments were instructed to review any and all fees under their supervision. Street cut permits are generally administered by PWD with

coordination between the City Engineer's Department and Inspections.

A previous study had been requested and conducted by the City Engineer and the Engineering Department as early as March 2000 with the specific purpose of setting the street cut permit fees based upon the actual costs of administration. Based on the March 2000 study, the City had an estimated 1,100 miles of paved streets and had engineering pavement management costs and related activities of approximately $350,000 per year. The City had a budget and spent approximately $2,500,000 in 2000 to resurface the City's streets. In addition, the PWD reviewed an APWA study which found that the typical "true cost" of a municipality street cut to be between $950 and $1,400. PWD also considered a municipal ordinance adopted by the City of Nashville, Tennessee, which was based on the same factors the City of Chattanooga was evaluating. The Nashville ordinance set a street cut permit fee of $500, plus the "cost of repair" and a fee of $1.10 fee per foot for parallel street cuts. By comparison, the City of Chattanooga's street cut permit fee Ordinance 9099, which was adopted by the City in 1991, required only a $15 application fee plus $.05 per foot for parallel street cuts.

McDonald further states it was this core information, plus other unspecified street cut studies, regarding the City's administrative costs and other expenses that caused McDonald to recommend an increase in the City's street cut permit fees. According to McDonald, the City collected $53,990.75 in street cut permit fees in 1999, and collected $22,018.20 in street cut permit fees in 2000. PWD prepared Ordinance 11175 and it was passed by the City Council in September 2001. Ordinance 11175 amended City Code Section 32-64 by setting a new $300 permit fee for utility cuts in street pavement, a $100 permit fee for driveway or curb cuts, and a minimum $300 permit fee for parallel-to-centerline cuts at $1.00 per lineal foot.

When PWD received complaints concerning the new permit fee structure in Ordinance 11175, McDonald requested the Chattanooga City Engineer to review and reconsider the previous analysis. McDonald directed the City Engineer to determine the "real costs" incurred by the City in administering the street cut permit fee process, and any other costs to the City associated with street cut management and repair. In April 2002, the City Engineer's office calculated the cost to the City for each street cut permit to be approximately $2,186. The figure of $2,186 was calculated based on the following numbers. In 1999, the City issued 2233 street cut permits. The City also issued 2049 street cut permits in 2000. Personnel expenses associated with the City's street cut management, inspection, and repair was a total of at least $204,000 per year. The direct costs to the City associated with the annual street repaving program with outside contractors amounted to approximately $100,000 per year. It was assumed that the City spent approximately $2,175,000 per year directly related to street maintenance and repairs.

McDonald and PWD formed the opinion that they had not miscalculated the cost to the City for each street cut permit to the point of setting the fees in Ordinance 11175 too high and above cost. McDonald says that PWD reviewed the permit fee structure again in an effort to find ways to reduce the costs. PWD drafted and submitted Ordinance 11333 to the City Council, and it was passed in October 2002. Ordinance 11333 amended City Code Section 32-64 to reduce the street cut permit fee to $250 and the driveway cut permit fee to $50.

For purposes of this opinion, it is unnecessary for the Court to make findings of fact whether the street cut permit fees in Ordinances 11175 and 11333 are reasonably and closely related to the actual costs incurred by the City in granting permits to Chattanooga Gas, or in repairing any damage caused by Chattanooga Gas when cutting into and excavating City streets. The Court

merely observes that the method used by the City and PWD to calculate the City's actual costs of administration, as explained in McDonald's affidavit, is open to reasonable debate. It is significant that Chattanooga Gas is already required under Section 4 of Ordinance 7746, the franchise agreement, to exercise "reasonable diligence" to restore the streets to as good state of repair and condition" as the streets were before being disturbed by Chattanooga Gas and that Chattanooga Gas "shall in all respects fully indemnify and save harmless the City from and against all damages, costs, attorney's fees, or other expenses which the City may incur by reason of such digging ...." Based on the franchise agreement, it appears that with regard to Chattanooga Gas cutting into and excavating streets, the actual costs to the City are minimal.

On May 24, 2004, the City brought a civil action against Chattanooga Gas in the Tennessee, for breach of contract. The action is styled *City of Chattanooga v. Chattanooga Gas Company*, Chancery Court of Hamilton County, Case No. 04-0555. The City claims that Chattanooga Gas has breached the franchise agreement by failing to make full payment of the franchise fees for calendar years 2002, 2003, and 2004.

Chattanooga Gas subsequently filed the instant civil action in this federal district court under 42 U.S.C. § 1983 claiming that the City is violating certain provisions of the United States Constitution. Chattanooga Gas moved the Hamilton County Chancery Court to stay the lawsuit in Tennessee state court based on the parallel suit brought by Chattanooga Gas against the City in this Court. The Hamilton County Chancery Court granted the motion to stay.

## II. Complaint of Chattanooga Gas

In its complaint, Chattanooga Gas contends that by enacting Ordinances 11175 and 11333, the City is imposing new, additional fees on Chattanooga Gas each time it exercises its

bargained-for right to install, repair, maintain, and replace underground gas pipes and mains. Chattanooga Gas already pays substantial annual franchise fees to the City pursuant to the franchise agreement. Chattanooga Gas claims it is a breach of the franchise agreement for the City to unilaterally increase the monetary terms of the franchise agreement and to impose new monetary extractions for the contractual rights and privileges for which Chattanooga Gas already pays the franchise fees.

Chattanooga Gas pleads four causes of action. The first claim is that the City is violating the Contract Clause of the United States Constitution, Article I, § 10, cl. 1 which provides that no state shall make any law impairing the obligation of contracts. The second claim is that the City is violating the Takings Clause in the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment. The third claim is for breach of contract under Tennessee law. The fourth claim is that the City's actions are, for various reasons, arbitrary, capricious and unreasonable by depriving Chattanooga Gas of its property and contract rights under the franchise agreement. It is averred that the City is violating the substantive due process rights of Chattanooga Gas protected by the Fourteenth Amendment to the United States Constitution. All claims involving the alleged violations of the United States Constitution are brought by Chattanooga Gas pursuant to 42 U.S.C. § 1983.

Chattanooga Gas demands the following relief. Chattanooga Gas seeks a declaratory judgment that it is exempt or excepted from Ordinances 11175 and 11333 because of the franchise agreement. Chattanooga Gas also demands an injunction against the City prohibiting enforcement of Ordinances 11175 and 11333 against Chattanooga Gas, or mandating that the City exempt and except Chattanooga Gas from the terms of Ordinances 11175 and 11333 given the existing franchise

agreement. Chattanooga Gas also demands a declaratory judgment that Ordinances 11175 and 11333 are unconstitutional. Chattanooga Gas wants an injunction prohibiting the City from enforcing or seeking to enforce Ordinances 11175 and 11333 because they are unconstitutional. Chattanooga Gas further wants this Court to order the City to reimburse Chattanooga Gas for all permit fees and other fees collected by the City above and beyond the contracted franchise fees specified in the franchise agreement from the inception of the franchise agreement up to the present time. Finally, Chattanooga Gas seeks top recover its costs and reasonable attorney's fees incurred in this suit.

## III.    Pending Motions

There are two motions before the Court. Defendant City moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted. [Doc. No. 9]. This motion has been converted into one for summary judgment under Fed. R. Civ. P. 56.

Chattanooga Gas moves for partial summary judgment pursuant to Fed. R. Civ. P. 56 on its first claim of unconstitutional impairment of contract based its contention that the City is violating the Contract Clause of the United States Constitution. [Doc. No. 13]. Chattanooga Gas states that to the extent the Court may grant the motion, Chattanooga Gas stipulates and moves to dismiss all of its remaining claims and causes of action without prejudice. In short, Chattanooga Gas seeks to replicate the decision in *Southern California Gas Co. v. City of Santa Anna*, 336 F.3d 885 (9th Cir. 2003). In response, the City argues that due to the constraints of the TIA, this Court lacks subject matter jurisdiction.

## IV.    Analysis

The Court concludes that both motions [Doc. Nos. 9, 13] are **DENIED**. The Court does not reach the merits of the complaint by Chattanooga Gas. The Court expresses no opinion concerning whether Chattanooga Gas is entitled to any relief under the laws of the United States or Tennessee law.

### A.    Tax Injunction Act, 28 U.S.C. § 1341

The TIA has its roots in equity, in principles of comity and federalism, and in recognition of the imperative need of state and local governments to administer their own fiscal operations by raising tax revenue. *Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 522 (1981); *Tully v. Griffin, Inc.*, 429 U.S. 68, 73 (1976); *Colonial Pipeline Co. v. Morgan*, 474 F.3d 211, 217-18 (6th Cir. 2007); *American Landfill, Inc. v. Stark/Tuscarawas/Wayne Joint Solid Waste Management District,* 166 F.3d 835, 840 (6th Cir. 1999); *In re Gillis*, 836 F.2d 1001, 1003 (6th Cir. 1988); *City of Chattanooga v. BellSouth Telecommunications, Inc.*, 1 F. Supp.2d 809, 812 (E.D. Tenn. 1998). The last consideration is the principal motivating force behind the enactment of the TIA. The TIA is first and foremost a vehicle to "limit drastically" the jurisdiction of federal district courts "to interfere with so important a local concern as the collection of taxes." *Rosewell,* 450 U.S. at 522; *see also California v. Grace Brethren Church*, 457 U.S. 393, 408-09 (1982); *Wilson v. Bredesen*, 113 Fed. Appx. 70, 72 (6th Cir. 2004); *Gillis*, 836 F.2d at 1003; *City of Chattanooga*, 1 F. Supp.2d at 812.

The Sixth Circuit has said that the purposes of the TIA are to promote comity and to afford state governments the broadest independence, consistent with the United States Constitution, in the administration of their affairs, particularly revenue raising. *Wilson*, 113 Fed. Appx. at 72; *Hedgepeth v. State of Tennessee*, 215 F.3d 608, 611 (6th Cir. 2000); *Wright v. McClain*, 835 F.2d

143, 144 (6th Cir. 1987); *see also, City of Chattanooga*, 1 F. Supp.2d at 812. Federal district courts are also under an equitable duty to refrain from interfering with the collection of taxes by state governments and by local governments operating under authority of state law, except in cases where an asserted federal right might otherwise be lost. *Tully*, 429 U.S. at 73; *Colonial Pipeline*, 474 F.3d at 218; *King v. Sloane*, 545 F.2d 7, 8 (6th Cir. 1976) (Federal courts will not entertain actions seeking relief from state or local government taxes unless federal rights are protected in no other way).

State taxation that is subject to the TIA includes local taxes imposed by county and municipal governments acting under the authority of state law. *Hibbs v. Winn*, 542 U.S. 88, 100 n. 1 (2004); *Wahington v. Linebarger, Goggan, Blair, Pena & Sampson, LLP,* 338 F.3d 442 (5th Cir. 2003) (challenge to constitutionality of city ordinance barred by TIA); *Home Builders Assn. of Mississippi, Inc.  v. City of Madison, Mississippi*, 143 F.3d 1006, 1010 n. 6 (5th Cir. 1998); *Folio v. City of Clarksburg,* 134 F.3d 1211, 1214 (4th Cir. 1998); *Collins Holding Corp. v. Jasper County, S.C.,* 123 F.3d 797, 799 (4th Cir. 1997); *Kunkle v. Fulton County Bd. of Comm'rs*, 922 F.2d 841, (Table, text in 1991 WL 1120, * 2 (6th Cir. Jan. 8, 1991)); *Indian Creek Monument Sales v. Adkins,* 301 F. Supp.2d 555, 560 (W.D. Vir. 2004); *Lake Lansing Special Assessment Protest Ass'n v. Ingham County Bd. of Comm'rs*, 488 F. Supp. 767, 772-73 (W.D. Mich 1980); 17A Wright, Miller, Cooper & Amar, Federal Practice and Procedure: Jurisdiction 3d § 4237 (2007) ("Wright & Miller").        The TIA is broadly construed as barring suits for declaratory judgment and injunctive relief. *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582, 586-88 (1995); *Grace Brethren Church*, 457 U.S. at 407-411; *Wilson*, 113 Fed. Appx. at 72-73; *Hedgepeth*, 215 F.3d at 612 n. 4; *Folio,* 134 F.3d at 1214; *Cumberland Farms, Inc. v. Tax Assessor,*

*State of Maine*, 116 F.3d 943, 945 (1st Cir. 1997); *Thiokol Corp., Morton Intern., Inc. v. Roberts*, 76 F.3d 751, 761 (6th Cir. 1996); *Gillis*, 836 F.2d at 1003-05; *Dominion Nat. Bank v. Olsen*, 771 F.2d 108, 114 (6th Cir. 1985); *King v. Sloane*, 545 F.2d 7 (6th Cir. 1976); *Indian Creek Monument Sales,* 301 F. Supp.2d at 559-60; *City of Chattanooga*, 1 F. Supp.2d at 812.

To determine whether the TIA divests this Court of subject matter jurisdiction, the Court makes two inquiries. First, the Court must decide whether the application fees for street cut permits provided in Ordinances 11175 and 11333 constitute a "tax" within the meaning of the TIA. If they are a tax, then the second inquiry is whether a plain, speedy and efficient remedy may be had by Chattanooga Gas in the Tennessee state courts.

B.    <u>Ordinances 11175 and 11333 as a Tax Under the TIA</u>

In Ordinances 11175 and 11333, the City labels the assessments as being "fees." Although the label given by the City may be instructive, it is not dispositive of the question whether the assessments are a tax under the TIA. The City's failure to label the assessments as a "tax" does not automatically clothe this Court with subject matter jurisdiction under the TIA. The definition of what constitutes a "tax" within the meaning of the TIA is governed by federal law, not Tennessee law. *Neinast v. State of Texas,* 217 F.3d 275, 278 (5th Cir. 2000); *Hedgepeth,* 215 F.3d at 612; *American Landfill*, 166 F.3d at 837; *Folio,* 134 F.3d at 1217; *Wright*, 835 F.2d at 144; *Lightwave Technologies, L.L.C. v. Escambia County*, 43 F. Supp.2d 1311, 1314 (S.D. Ala. 1999); *City of Chattanooga*, 1 F. Supp.2d at 812-13.

When addressing the question whether a government assessment constitutes a tax under the TIA, the federal courts determine whether the purpose of the assessment is to raise general revenue or, in the alternative, to merely collect a regulatory or punitive levy in the nature of a

14

privilege fee. *Valero Terrestrial Corp. v. Caffrey,* 205 F.3d 130, 134 (4th Cir. 2000); *Cumberland Farms*, 116 F.3d at 946-47; *Wright*, 835 F.2d at 144-45; *City of Chattanooga*, 1 F. Supp.2d at 813. One of the most important characteristics and distinguishing features of a tax is that it is imposed by the government for the purpose of raising general revenue. *Valero Terrestrial Corp.,* 205 F.3d at 134-35; *Folio*, 134 F.3d at 1217; *Cumberland Farms*, 116 F.3d at 946-47; *San Juan Cellular Telephone Co. v. Public Service Comm'n,* 967 F.2d 683, 685 (1st Cir. 1992); *Diginet, Inc. v. Western Union ATS, Inc.,* 958 F.2d 1388, 1399 (7th Cir. 1992); *Wright*, 835 F.2d at 144-45; *Lightwave Technologies*, 43 F. Supp.2d at 1314; *City of Chattanooga*, 1 F. Supp.2d at 813; *see also New Jersey v. Anderson*, 203 U.S. 483, 492 (1906) ("Generally speaking, a tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the Government."); *American Civil Liberties Union of Tennessee v. Bredesen*, 441 F.3d 370, 373 (6th Cir. 2006).

The First Circuit in *San Juan Cellular Telephone,* 967 F.2d at 685, explains that the federal courts have "sketched a spectrum with a paradigmatic tax at one end and a paradigmatic fee at the other." The classic tax is imposed by a legislative body upon many, or all, its citizens. A tax raises money that is contributed to or placed in a general fund, and the money is spent for the benefit of the community at large. The classic regulatory fee is imposed by a government agency upon those specific persons or entities subject to its regulation. It may serve regulatory purposes directly by, for example, deliberately discouraging specific conduct by making it more expensive. It can also serve a regulatory purpose indirectly by, for example, raising money to be placed in a special fund (not general fund) to help defray the agency's regulation-related expenses. *San Juan Cellular Telephone,* 967 F.2d at 685; *accord Bredesen*, 441 F.3d at 374-75; *Neinast,* 217 F.3d at 278; *Hedgepeth,* 215 F.3d at 612; *Valero Terrestrial Corp.,* 205 F.3d at 134; *American Landfill,* 166 F.3d

at 838-39; *City of Chattanooga*, 1 F. Supp.2d at 813.

The First Circuit's approach in *San Juan Cellular Telephone* has been adopted by the Sixth Circuit. The Sixth Circuit utilizes a three-factor test to determine whether a government assessment is a tax under the TIA. We consider: (1) the entity that imposes the assessment, i.e. legislative body acting in legislative capacity or regulatory administrative agency; (2) the parties upon whom the assessment is imposed; and (3) whether the revenue raised by the assessment is expended for general public purposes, or instead for the benefit of the parties upon whom the assessment is imposed. *Hedgepeth,* 215 F.3d at 612; *American Landfill*, 166 F.3d at 837; *accord Valero Terrestrial Corp.,* 205 F.3d at 134; *Bidart Bros v. California Apple Comm'n*, 73 F.3d 925, 931 (9th Cir. 1996).

The characterization of a government assessment as being either a tax or a regulatory fee is rarely a clear choice between black and white. Many government assessments fall into a gray area somewhere in the middle of the spectrum. The fees assessed by the City in Ordinances 11175 and 11333 fall into this gray area. When faced with cases that lie near the middle of the spectrum, the predominant factor is the revenue's ultimate use. If the ultimate use of the revenue is to provide a general benefit to the public of a sort typically financed by a general tax, then the assessment is likely a tax under the TIA, 28 U.S.C. § 1341. *Hedgepeth,* 215 F.3d at 612; *Valero Terrestrial Corp.,* 205 F.3d at 134; *American Landfill*, 166 F.3d at 838; *Cumberland Farms*, 116 F.3d at 946-47; *San Juan Cellular Telephone,* 967 F.2d at 685; *City of Chattanooga*, 1 F. Supp.2d at 813-14.

Applying the three-factor test adopted by the Sixth Circuit in *Hedgepeth,* 215 F.3d at 612, and *American Landfill*, 166 F.3d at 837, this Court concludes that the first and third factors weigh heavily in favor of finding that the application fees for street cut permit in Ordinances 11175

and 11333 are a tax under the TIA.  The assessment of these fees by the City falls much closer to the tax end of the spectrum than the regulatory fee end.  The most salient factor in reaching this decision is that the ultimate destination of the fees is the City's general revenue.  *City of Chattanooga*, 1 F. Supp.2d at 814.

Chattanooga Gas contends the first factor is neutral because the City has enacted the levy in Ordinances 11175 and 11333.  Chattanooga Gas argues that when the City adopted Ordinances 11175 and 11333, the City's actions were equivalent to those taken by an administrative regulatory agency.  This argument fails.  The adoption of Ordinances 11175 and 11333 by the Chattanooga City Council are legislative acts taken by the City's legislative body.  *State of Tennessee, ex rel. Wilson v. City of Lafayette*, 572 S.W.2d 922, 924 (Tenn. 1978) (City council is legislative body).  As a municipal corporation, the City is vested with both legislative and executive powers.  Executive powers are sometimes also referred to as administrative or ministerial powers and duties.  The City's legislative power is the power to create and make laws through the adoption of municipal ordinances.  2A McQuillen Mun. Corp. § 10.06 (3rd ed. 2005).

There is a simple test for determining whether a municipal ordinance is either legislative or administrative in nature.  A municipal ordinance that makes new substantive law is legislative.  On the other hand, an ordinance that merely executes a law already in existence is administrative.  For example, a decision by a municipality to grant or deny an application for a building permit would be an inherently administrative act, even if it is made by a legislative body, because the decision does not involve making new substantive law and merely involves the execution or application of existing law.  *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990); *State of Tennessee, ex rel. Moore & Associates, Inc. v. West*, 2005 WL 176501, * 4 (Tenn.

Ct. App. Jan. 26, 2005); 2A McQuillen Mun. Corp. § 10.06.

This Court finds that the City's adoption of Ordinances 11175 and 11333 are legislative acts. The City exercised its legislative power to amend the substantive law and make new law. The City Council's decisions to adopt Ordinances 11175 and 11333 were not in the nature of administrative acts. Consequently, the first factor weighs in favor of finding that the application fees for street cut permits in Ordinances 11175 and 11333 are a tax under the TIA. *Cf. Valero Terrestrial Corp.,* 205 F.3d at 134 (Solid waste assessment charge a tax under TIA because it is imposed by state legislature, not an administrative agency).

With regard to the third factor, the funds that are raised by the assessments go into the City's general revenue and are expended by the City for general public benefit. There is no proof that the fees charged by the City under Ordinances 11175 and 11333 are deposited and maintained in a special fund that is kept separate and apart from the City's general revenue fund.[1] The paramount purpose and aim of Ordinances 11175 and 11333 is to raise revenue to pay for the expense of repairing, paving, and maintaining the City's public streets. This purpose directly serves the general welfare and interests of the community at large. *Cf. Hedgepeth,* 215 F.3d at 612; *Schneider Transport, Inc. v. Cattanach*, 657 F.2d 128, 132 (7th Cir. 1981) (Vehicle registration fees imposed on interstate trucking companies by Wisconsin Department of Transportation held to be

---

[1]  Chattanooga Gas contends the fees in Ordinances 11175 and 11333 bear no reasonable relationship to the actual costs incurred by the City in granting permits to Chattanooga Gas, or to any damage caused by Chattanooga Gas in exercising its rights under the franchise agreement for cutting and excavating City streets. If Chattanooga Gas is correct on this point, then it tends to show that the fees are in the nature of a tax raising general revenue. This Court does not reach the question whether the fees imposed by Ordinances 11175 and 11333 constitute a tax under Tennessee law. This Court concentrates here solely on the TIA, 28 U.S.C. § 1341.

a tax under the TIA because the fees were imposed for revenue-raising purposes where fees were used to pay for highway construction, a general type of public expenditure); *Wright*, 835 F.2d at 145; *Lightwave Technologies*, 43 F. Supp.2d at 1314-15.  Ordinances 11175 and 11333 are not designed to benefit only a narrow class of persons or small segment of the Chattanooga community.

Moreover, the assessments in Ordinances 11175 and 11333, as applied to Chattanooga Gas in the context of its utility franchise agreement with the City, are in effect a revenue-raising tax.  Section 4 of Ordinance 7746, the franchise agreement, provides that when Chattanooga Gas cuts or excavates the streets for the purpose of installing and repairing its pipelines, Chattanooga Gas "shall with reasonable diligence restore such streets ... to as good state of repair and condition as the same were before disturbed by said Company and shall in all respects fully indemnify and save harmless the City from and against all damages, costs, attorney's fees, or other expenses which the City may incur by reason of such digging ...."  Under the terms of the franchise agreement in Section 4 of Ordinance 7746, Chattanooga Gas is contractually obligated to completely repair any cuts and physical damage it may cause to City streets, and to fully indemnify and save harmless the City from and against all damages, costs and other expenses that the City may incur. The City is not imposing and seeking to collect the assessments in Ordinances 11175 and 11333 from Chattanooga Gas in order to recover the actual costs of administration that the City may incur in connection with Chattanooga Gas excavating and cutting into the Cstreets.  Insofar as Chattanooga Gas is concerned, the assessments imposed by the City in Ordinances 11175 and 11333 raise general revenue for the City.  This further weighs in favor of finding that the fees charged to Chattanooga Gas pursuant Ordinances 11175 and 11333 are a tax under the TIA.  *Cf. Lightwave Technologies*, 43 F. Supp.2d at 1314-15.

The second factor, the parties upon whom the assessment is imposed, weighs slightly in favor of finding it is not a tax. The application fees in Ordinances 11175 and 11333 are targeted to a group of persons and entities (e.g. public utilities) that cut into and excavate the streets. However, the mere fact that a government assessment targets only a relatively narrow class or group of persons, standing alone, is not enough to warrant characterizing the assessment as a regulatory or privilege fee and not a tax under the TIA. *Hedgepeth*, 215 F.3d at 614; *Wright*, 835 F.2d at 144-45.

After considering these three factors, this Court concludes that the assessments imposed by Ordinances 11175 and 11333 are a tax under the TIA.

### C.    Plain, Speedy and Efficient Remedy Available in Tennessee State Courts

A plain, speedy and efficient remedy may be had by Chattanooga Gas on its complaint in the state courts of Tennessee. To satisfy the TIA, the remedy in the state courts need not necessarily be the best remedy available, or even equal to or better than the remedy that might be available in federal court. *Kunkle*, 1991 WL 1120, at * 1; 17A Wright & Miller § 4237.

The "plain, speedy and efficient remedy" language in the TIA is narrowly construed. *Grace Brethren Church*, 457 U.S. at 413; *Colonial Pipeline*, 474 F.3d at 218. It is only designed to require that the state remedy satisfy minimal procedural criteria. A state court remedy is plain, speedy and efficient for purposes of the TIA if it provides the taxpayer with a full hearing at which the taxpayer may be present and raise all constitutional objections to the tax, and obtain a judicial decision with ultimate review available in the United States Supreme Court. *Grace Brethren Church*, 457 U.S. at 408, 411; *Rosewell*, 450 U.S. at 514); *Colonial Pipeline*, 474 F.3d at 218; *Wilson*, 113 Fed. Appx. at 72; *Lawyer v. Hilton Head Pub. Serv. Dist. No. 1,* 220 F.3d 298, 305 (4th

Cir. 2000); *Hedgepeth*, 215 F.3d at 615; *Kunkle*, 1991 WL 1120, at * 1; *Indian Creek Monument Sales,* 301 F. Supp.2d at 560-61. The likelihood of Chattanooga Gas being successful on its complaint in the Tennessee state courts is not a factor for consideration when determining whether the TIA jurisdictional prohibition applies. *Colonial Pipeline*, 474 F.3d at 218.

Measured by this test, the Court finds that a plain, speedy and efficient remedy is available to Chattanooga Gas on its complaint in the Tennessee state courts. The Tennessee state courts can provide a full hearing where Chattanooga Gas can be present and raise all of its federal constitutional claims. The Tennessee state courts have concurrent jurisdiction over the causes of action asserted by Chattanooga Gas under 42 U.S.C. § 1983 and the United States Constitution. *Felder v. Casey*, 487 U.S. 131, 139 (1988); *Maine v. Thiboutot*, 448 U.S. 1, 10-11 (1980); *Martinez v. California*, 444 U.S. 277, 283-84 n. 7 (1980); *Wilson*, 113 Fed. Appx. at 74; *Glover v. City of Portland, Tennessee*, 675 F. Supp. 398, 406 (M.D. Tenn. 1987); *Wimley v. Rudolph*, 931 S.W.2d 513, 515 (Tenn. 1996); *Poling v. Goins*, 713 S.W.2d 305, 306-07 (Tenn. 1986); *Pendleton v. Mills*, 73 S.W.3d 115, 129 n. 23 (Tenn. App. 2001). In sum, the Tennessee state courts can adequately deal with and adjudicate the various claims and issues presented by the parties, and devise an appropriate remedy.

## V. Conclusion

The motion by the City for summary judgment [Doc. No. 9] is **DENIED**. The motion by Chattanooga Gas for partial summary judgment [Doc. No. 13] is **DENIED**.

Although the City raises the argument that this Court lacks subject matter jurisdiction due to the constraints of the TIA, the City has not made a formal motion to dismiss the complaint based on the TIA. In the absence of such a motion, the complaint of Chattanooga Gas shall be

**DISMISSED WITHOUT PREJUDICE** *sua sponte* pursuant to Fed. R. Civ. P. 12(h)(3) and the

TIA on the ground that this Court lacks subject matter jurisdiction.  Each party shall bear their own

costs of this action.   The Clerk of Court shall enter a final judgment in accordance with this

memorandum and order.

SO ORDERED.

ENTERED this 7th day of May, 2007.


_____*/s/ R. Allan Edgar*_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE